UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                   :

SIMON ZAROUR *et al.*,                :

                             :

                  Plaintiffs,     :

                             :                 15 Civ. 2663 (JPC)

        -v-                      :

                             :              <u>OPINION AND ORDER</u>

                             :

PACIFIC INDEMNITY COMPANY,      :

                             :

                  Defendant.     :

------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       This case involves a long-running insurance dispute regarding damage to Plaintiffs' home caused by Superstorm Sandy in October 2012.  Following an original appraisal in 2016 and a subsequent appraisal in 2022 focused on mold damage, Defendant Pacific Indemnity Company ("Pacific") seeks confirmation of the appraisal award and dismissal of this case.  Because the 2022 mold damage appraisal substantially complied with the terms of the Court's February 2017 Order directing that appraisal, and because there is no evidence that those appraisals were conducted with fraud, bias, or bad faith, the Court grants the motion to confirm the appraisal award.  The Court further directs the parties to make additional submissions addressing whether the case should now be dismissed.

## I.  Facts and Procedural History

       Plaintiffs Simon and Lori Zarour commenced this action by filing a complaint in federal court in the District of New Jersey against Chubb & Son Inc. and Pacific, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and bad faith on the part of those entities for their failure to cover damage to the Zarours' Spring Valley, New York home

caused by Superstorm Sandy on October 29, 2012.  Dkt. 1.  Pursuant to a stipulation, Chubb &

Son Inc. was dismissed from the action on March 31, 2015.  Dkt. 16.  The case was transferred to

this District on April 21, 2015 and was assigned to the Honorable Jed S. Rakoff.  Dkt. 17.  The

Zarours then filed an amended complaint on May 12, 2015.  Dkt. 25.

On June 2, 2015, Pacific moved for summary judgment as to certain of the Zarours' claims,

and to compel an insurance appraisal pursuant to the terms of the Zarours' insurance policy.  Dkts.

31-34.  That policy stated, in relevant part:

> If you and we fail to agree on the amount of loss, either one can demand that the
> amount of loss be set by appraisal.  If either makes a written demand for appraisal,
> each shall select a competent, independent appraiser and notify the other of the
> appraiser's identity within 20 days of receipt of the written demand.  The two
> appraisers shall then select a competent, impartial umpire.  If the two appraisers are
> unable to agree upon an umpire within 15 days, you or we can ask a judge of a court
> of record in the state where the residence premises is located to select an umpire.
> The appraisers shall then set the amount of loss.  If the appraisers submit a written
> report of an agreement to us, the amount agreed upon shall be the amount of the
> loss.  If the appraisers fail to agree within a reasonable time, they shall submit their
> differences to the umpire.  Written agreement signed by any two of these shall set
> the amount of the loss.

Dkt. 99-3 ("Policy") at 68.  On July 6, 2015, Judge Rakoff dismissed the Zarours' demands for

consequential and punitive damages, as well as their claim for breach of the implied covenant, and

also granted Pacific's motion for an appraisal, staying the case pending that appraisal.  *Zarour v.*

*Pac. Indem. Co.*, 113 F. Supp. 3d 711, 715-18 (S.D.N.Y. 2015).

On September 26, 2016, a three-person appraisal panel issued an award in the Zarours'

favor in the amount of $110,490.20.  *See Zarour v. Pac. Indem. Co.*, No. 15 Civ. 2663 (JSR), 2017

WL 946332, at *1 (S.D.N.Y. Feb. 22, 2017) (the "February 2017 Order").  But because this

appraisal did not consider mold damage to the home, *id.*, Judge Rakoff ordered the panel to reopen

the appraisal to determine "if, and to what extent, plaintiffs have suffered losses under the Policy

due to mold damage," *id.* at *3.

On September 29, 2020, this case was reassigned to the undersigned.  *See* Sept. 29, 2020 Notice of Case Reassignment.  On October 29, 2020, the Court ordered the parties to file a joint letter discussing the status of the case within two weeks.  Dkt. 50.  Although the parties failed to file that joint status letter, *see* Dkt. 51, Pacific filed its own letter on November 13, 2020, which indicated that the Zarours had never proceeded with the reopened appraisal and sought leave to file a motion to dismiss this case for failure to prosecute under Federal Rule of Civil Procedure 41(b).  Dkt. 52.  The Court granted Pacific leave to make that motion, which Pacific filed on January 25, 2021.  Dkts. 56, 57.  The Zarours opposed on February 8, 2021, Dkt. 59, and the Court denied the motion on February 25, 2021, ordering the parties to complete the appraisal within ninety days, Dkt. 61 (the "February 2021 Order").  Two days before that deadline, the Zarours sought an extension of time due to "technical and health issues that created the delay in the performance."  Dkt. 62.  In particular, it was apparently the position of Steven Temes, an industrial hygienist retained by the Zarours to assess mold in their home, that photographs of wall and ceiling cavities indicated the presence of mold, that therefore "[i]t is necessary to remove large areas of sheetrock and insulation to perform a thorough inspection of the home for hidden mold," and that "[p]rofessional remediation of visible mold growth and dust from disturbed insulation should be performed" but such actions could not be taken without "first establishing containment" due to the fact that the house was occupied by the Zarours.  *Id.* at 4-5.

Pacific opposed this extension and explained to the Court that it had retained Frank Antonucci, Jr. as an appraiser and additionally retained an industrial hygienist, Robert Leighton, to help with a mold assessment.  Dkt. 63.  Pacific further maintained that it had heard "nothing . . . from plaintiffs" until they filed their motion for an extension.  *Id.*

In light of this information, the Court directed the Zarours to file a letter detailing the actions they had taken to comply with the February 2021 Order, as well as all their communications with Pacific.  Dkt. 64.  The Zarours' attorney then submitted a signed certification from Mr. Zarour addressing those issues.  *See* Dkt. 65 at 2-5.  Mr. Zarour explained that on March 4, 2021, they contacted their architect, Soli Foger, as well as Temes, who had previously submitted to Mr. Zarour "mold findings in reports made in 2015."  *Id.* at 2.  Temes conveyed "that he would not accept the liability of health hazards and risks involved unless the evaluation was done with proper containment, specific precautions, and within appropriate guidelines," apparently referring to the previously discussed hazards of removing large portions of the walls to conduct an inspection.  *Id.* Foger also told the Zarours on March 4, 2021 that "unless areas are opened and exposed . . . he could not make or add information to his previous report of 2015."  *Id.*  Mr. Zarour further explained that his wife and daughter, who lived in the home, "were opposed to any inspection" and could not move to another location.  *Id.* at 2-3.  Mr. Zarour then determined, after "doing research online over several days," that to comply with the Court's February 2021 Order he "decided to take pictures from small patches cut open outside of the house" and conveyed this to Temes.  *Id.* at 3.  He cut these patches on April 22, 2021 and sent photographs to Temes on May 3, 2021.  *Id.*  Temes "suggested that more informative photographs could be taken from cavities inside the home."  *Id.*; *see also* Dkt. 101-2 (Affirmation of Steven Temes) at 8 (stating that Temes's organization "requested that Mr. Zarour assume the responsibility of cutting small inspection patches, especially in locations where he had observed water intrusion during Superstorm Sandy").  By May 11, 2021, Mr. Zarour had "configured a mean[s] in which [he] would be able to make cuts in various interior parts of the house without spreading mold."  Dkt. 65 at 3.  He then sent photographs taken from such cuts to Temes on May 19, 2021, and on May 25, 2021, he contacted

Foger, who informed him that "he is not an appraiser" but could "evaluate the value of repairs." *Id.* Regarding his communications with Pacific, Mr. Zarour stated that he "thought that it wasn't appropriate to communicate with defendant until the information could be collected and evaluated by [his] experts, so that we could then schedule a joint inspection of the cavities" that Mr. Zarour had cut himself. *Id.* Otherwise, Mr. Zarour explained, he feared the parties "were likely to set timetables and schedule meetings that we (my experts and I) would not be ready for." *Id.* at 3-4. The Court granted the Zarours' request for an extension, and directed that the appraisal be completed by August 24, 2021. Dkt. 66.

The Zarours again wrote to the Court on August 18, 2021, Dkt. 67, seeking a further extension because of scheduling issues among the appraisal team and articulating the Zarours' position that "[i]n the opinion of our experts the appraisal would be bias [sic] if not allowed to include the water staining evidence along with the mold evidence that would allow the proper assessment of the true extent of the wind driven rain damage that was never assessed completely," *id.* at 2, despite the fact that Judge Rakoff's February 2017 Order was clear that the appraisal was reopened for the purposes of assessing mold damage only, *Zarour*, 2017 WL 946332, at *3. The Zarours additionally asked the Court to name an umpire to resolve the appraisal as the parties' experts had been unable to select one. Dkt. 67 at 3.

Pacific opposed the extension, sought dismissal, and opposed any attempt to expand the appraisal beyond the issue of mold. Dkt. 69. Pacific explained that its expert, Antonucci, and his mold assessor, Leighton, had inspected the Zarours' home on August 16, 2021 by taking "surface and air samples from the home for laboratory testing." *Id.* at 2. They then "prepared a

comprehensive Mold Assessment Report with the laboratory results (showing very minor mold)," and provided a "mold remediation cost estimate." *Id.*[1]

Following an October 25, 2021 court conference, the Court appointed Justin Lewis as the umpire for the appraisal and ordered that the appraisal be completed by December 7, 2021. Dkt. 77. The Court also required the parties to file a joint letter by December 10, 2021, explaining any differences among the appraisers for the umpire to resolve. *Id.* And finally, the Court rejected the Zarours' attempt to expand the scope of the appraisal beyond mold damage. *Id.*

On December 7, 2021, the Zarours reported that the appraisers, including Umpire Lewis, requested an extension of time to complete the appraisal. Dkt. 80. Pacific did not oppose this request, but instead highlighted that the Zarours had provided no reason for the delay and informed the Court that Foger, who was acting as the Zarours' appraiser, had been communicating with Umpire Lewis *ex parte* in an attempt to improperly expand the scope of the appraisal to include water damage, in contravention of the Court's prior orders. Dkt. 81 at 1-2. The Zarours later disputed that such *ex parte* communications with Umpire Lewis had occurred. Dkt. 83. The Court granted the request for an extension a day later, and required that the appraisal be completed by February 7, 2022. Dkt. 82. The Court also directed the parties to file a letter by February 10, 2022 indicating whether there were any disagreements between the appraisers that Umpire Lewis would need to resolve. *Id.*

The parties failed to timely file that letter. On February 11, 2022, the Court ordered the letter to be filed by 6:00 p.m. that day. Dkt. 84. The parties then informed the Court that additional time was needed to complete the appraisal because the first mold expert identified by Umpire

---

[1] The results of this assessment may be found at Docket Number 105-2 ("Leighton Report"), starting at page two.

Lewis had ceased working on the matter.  Dkt. 85.  The Court granted an extension of the appraisal deadline to March 14, 2022 and required the parties to file a letter by February 18, 2022 on the status of the appraisal.  Dkt. 86.  On February 18, 2022, Pacific informed the Court that both Foger and Antonucci had completed their damage estimates but Umpire Lewis had not completed his estimate because he had only recently identified Hillman Consulting, LLC ("Hillman") to conduct a mold analysis and had not yet retained Hillman.  Dkt. 87.  Pacific also reported that Umpire Lewis had held a conference call with the appraisers and mold experts on November 22, 2021, which was memorialized in an email attached to Pacific's letter.  *Id.* at 1, 4.  That email indicated that Leighton and Temes "do not agree on scope"; reflected that Leighton had completed "air sampling," "moisture mapping," and "surface sample testing" but that Temes "did not complete any testing"; and set out next steps for the appraisal process.  *Id.* at 4.

The Court required an additional status letter by February 26, 2022 indicating what steps the parties and Umpire Lewis would take to complete any remaining appraisal items and whether the umpire expected to meet the March 14 deadline.  Dkt. 89.  The parties filed that letter on February 25, 2022 and informed the Court that the appraisal would be completed by March 14 after Umpire Lewis had received a report from Hillman.  Dkt. 91.  The parties also reported that Umpire Lewis had reviewed their respective appraisers' damages submissions.  *Id.*  Antonucci estimated damages at $3,609.21, while Foger estimated damages at $731,317.03.  *Id.* at 2.

On March 16, 2022, Pacific filed a letter stating that two of the three appraisers, Antonucci and Umpire Lewis, had agreed on an appraisal award which was attached to that letter.  Dkt. 92.  That award set the "Additional Mold Damage Replacement Cost Value" at $5,016.80 and the "Additional Mold Damage Actual Cash Value" at $4,264.28, which reflects a depreciation value of $752.52.  *Id.* at 4.  Foger objected to the award.  Dkt. 93.

On April 29, 2022, Pacific moved to confirm the appraisal award, although because of filing difficulties its motion papers were refiled on May 11, 2022. Dkts. 96-100. The Zarours opposed that motion on May 13, 2022. Dkts. 101, 102 ("Opposition"), 103. Pacific filed a reply on May 27, 2022. Dkts. 104, 105. The Zarours filed a request for oral argument and a request to file a sur-reply on June 1, 2022. Dkt. 106.[2]

## II.  Legal Standard

Under New York law,

> An appraisal shall determine the actual cash value, the replacement cost, the extent of the loss or damage and the amount of the loss or damage which shall be determined as specified in the policy and shall proceed pursuant to the terms of the applicable appraisal clause of the insurance policy and not as an arbitration. Notwithstanding the provisions of this subsection, an appraisal shall not determine whether the policy actually provides coverage for any portion of the claimed loss or damage.

N.Y. Ins. Law § 3408(c) (2023). "The appraisal must also 'substantially' comply 'with the terms of the submission.'" *Coral Crystal, LLC v. Fed. Ins. Co.*, No. 17 Civ. 1007 (LTS) (BCM), 2020 WL 5350306, at *4 (S.D.N.Y. Sept. 3, 2020) (quoting *Glicksman v. N. River Ins. Co.*, 448 N.Y.S.2d 77, 78 (App. Div. 1982)).

"Appraisal awards are presumed valid where the panel 'substantially complied with the terms of the submission.'" *Sinclair Wyo. Refin. Co. v. Infrassure, Ltd.*, 970 F.3d 1317, 1324 (10th

---

[2] On June 2, 2022, the Court denied the Zarours' request to file a sur-reply without prejudice because they failed to provide any basis for why a sur-reply was necessary. Dkt. 107. The Zarours made a subsequent application to submit a sur-reply, or in the alternative for oral argument, explaining that they sought to provide information from Temes and Foger "on how the panel was prejudiced, biased and did not comply with Rockoff's [sic] order." Dkt. 108. The Court also denied that subsequent request without prejudice, because the Zarours failed to explain why they could not have raised the cited arguments in their opposition brief, nor did they point to arguments first made by Pacific in its reply brief. Dkt. 109.

Because the Court finds that oral argument is not necessary to resolve Pacific's motion, the Court also now denies Zarours' request for oral argument.

Cir. 2020) (quoting *Gansevoort Holding Corp. v. Palatine Ins. Co.*, 170 N.Y.S.2d 171, 174 (Sup. Ct. 1957), *aff'd*, 181 N.Y.S.2d 172 (Mem) (App. Div. 1958)).  The Court may vacate or modify such awards "only on a showing of 'fraud, bias or bad faith.'"  *Coral Crystal*, 2020 WL 5350306, at *5 (quoting *Zarour*, 2017 WL 946332, at *1); *see also 101 W. 23 Owner I LLC v. 715-723 Sixth Ave. Owners Corp.*, 102 N.Y.S.3d 426, 427 (App. Div. 2019) (finding "no basis to disturb the neutral's appraisal" where the "appraisal followed the procedures as set forth in the lease" and there was no evidence of "fraud, bias or bad faith"); *Johnson Kirchner Holdings, LLC v. Galvano*, 54 N.Y.S.3d 647, 649 (App. Div. 2017) ("An appraisal will not be set aside absent proof of fraud, bias, or bad faith." (citation omitted)); *Sinclair*, 970 F.3d at 1324, at *6 (Absent a showing of fraud, bias, bad faith, misconduct, or a failure on behalf of the appraisers to abide by the governing contract, courts [applying New York law] will not set aside an appraisal award."); *Silverstein v. XL Specialty Ins. Co.*, No. 15 Civ. 6818 (VEC), 2016 WL 3963129, at *5 (S.D.N.Y. July 21, 2016) ("An appraisal award should be upheld unless there is clear and convincing evidence that the appraiser rendered the award in bad faith without sufficient thoroughness or based on bias or fraud.").  In other words, "[w]here an appraisal stays within its statutory and contractual limits, it is 'entitled to every reasonable intendment and presumption of validity.'"  *Coral Crystal,* 2020 WL 5350306, at *5 (quoting *Glicksman*, 448 N.Y.S.2d at 78).  "In such cases 'appraisal awards receive deferential judicial review that is similar—but not identical—to the standard of judicial review for arbitration awards.'"  *Id.* (quoting *Silverstein*, 2016 WL 3963129, at *5).  This standard is not identical to that for review of arbitration awards because unlike an arbitration, an appraisal under New York law "may only decide a limited set of factual disputes," *Zarour*, 2017 WL 946332, at *2, as reflected in section 3408 of the New York Insurance Law.  A party challenging the award "need not establish one of the grounds set forth in New York CPLR § 7511—governing

[vacating or modifying an] *arbitration* [award]—to vacate or modify an *appraisal* award."  *Id.* (emphasis in original).

## III.  Discussion

The Zarours make two arguments attacking the 2022 appraisal award.[3]  First, the Zarours argue that "the signed appraisal differs to so great a degree from the estimate of appraiser [sic] provided by Foger . . . . that something must be amiss, and clearly at least part of that something must be the lack of a proper inspection of the house. . . .  This in turn leads to a conclusion that the signed appraisal must have been a product of corruption or partiality by Pacific's arbitrator [sic] and/or the Umpire."  Opposition at 2.  Second, and relatedly, the Zarours argue that the award should be vacated because the appraisal did not substantially comply with the terms of the submission, set out in the February 2017 Order, because the appraisers did not conduct an invasive and destructive investigation for mold.  *Id.* at 3.

Both arguments are faulty.  In support of their argument that a disparity between a final appraisal award and an award proposed by a single appraiser gives rise to "a conclusion that the signed appraisal must have been a product of corruption or partiality" the Zarours cite only to *Nemo Tile Co., Inc. v. 260 Park Avenue South, LLC*, 851 N.Y.S.2d 71 (table), 2007 WL 4117610, at *4 (N.Y. Sup. Ct. Oct. 17, 2007).  *See* Opposition at 1-2.  That case stated that "[a]s this is an appraisal arbitration, the standard of review is whether appraisal 'estimates are so enormously disproportioned to the case proved as to strike everyone that there must have been corruption or partiality.'"  *Id.* (quoting *Viele v. Troy & B.R. Co.*, 21 Barb. 381, 396 (N.Y. Sup. Ct. 1855)).

---

[3] The Zarours' briefing opposing confirmation challenges only the recent mold appraisal, and so the Court does not construe it as objecting to the 2016 appraisal covering non-mold damage. *See generally* Opposition.

There are a few problems with this argument.  First, the standard stated in *Nemo Tile* was applied to a motion to vacate an arbitration award which included an appraisal, not a standalone appraisal as occurred here, and appears to have referred to the standards set out in New York Civil Procedure Law & Rules section 7511 for vacating an *arbitration* award on the grounds of either "corruption" or "partiality."  N.Y. C.P.L.R. § 7511(b)(1)(i)-(ii) (2023).  As indicated above, that is not the standard customarily applied by courts under New York Insurance Law section 3408 in assessing appraisals that are not part of arbitrations.  *See, e.g., Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 207 (2d Cir. 2012) ("Procedurally, 'the prevailing practice in appraisals in more informal and entirely different from the procedure governing arbitration.'" (quoting *In re Penn Cent. Corp.,* 436 N.E.2d 512, 516 (N.Y. 1982))).

Second, the court in *Nemo Tile* observed that the estimates must be "enormously disproportioned to the *case proved*."  *Nemo Tile*, 2007 WL 4117610, at *4 (emphasis added).  But here, the appraisal value provided by the Zarours' retained architect, Foger, who the Court notes is self-admittedly not a certified appraiser, *see* Dkt. 101-1 ("Foger Affirmation") at 14 ("I advised owner that I am not certified appraiser . . . ."), was not based on a proven amount of mold damage but rather was based on the believed presence of mold which Foger would not investigate without opening up the walls and ceilings of the Zarours' home.  *Id.* at 1.  In other words, Foger's estimate, which is the only possible reference point to which the final appraisal award could be considered "disproportioned," was not based on the case proved, but rather on assumed damages.  This conclusion is further supported by the fact that Foger himself refers to his appraisal award value as the amount that "it will cost to *appraise* and remediate the mold growth," *id.* at 3 (emphasis added), indicating both that his award encompassed more than remediation costs and that he had not established the extent of mold in the Zarours' home.

Third, and relatedly, Foger's estimate of $731,317.03 was first generated in August 2021, when Foger was still maintaining that the "house needs to be rebuilt or renovated entirely," Dkt. 67-3 at 3, and that the appraisal should cover the "damage repair caused by the wind driven rain" as opposed to only mold damage, *id.* (emphasis omitted); *see* 69-2 (Declaration of Frank Antonucci, Jr.) ¶ 29 (reflecting that Foger reached his $731,317.03 valuation in August 2021); Foger Affirmation at 8 ("I need to reiterate, that the damage to the house is not limited to the mold specified in my report, but to assert the extent of [w]ind driven rain damage caused by that storm which was far more extensive than previously assessed.  My professional opinion confirms that the whole home needs to be completely rebuilt.").  But after the Court rejected the Zarours' argument that the scope of the appraisal should be expanded beyond mold damage, *Foger's estimate did not change.*[4]

Finally, the reason an appraisal is submitted to an umpire is for the umpire to resolve differences in the appraisal award calculated by the party's appraisers.  Allowing the magnitude of that disparity alone, without reference to the underlying demonstrated facts, to provide a means

---

[4] There is also reason to suspect that the $731,317.03 figure is in fact not even *Foger's* estimate of remediation costs, but was instead generated by Mr. Zarour himself using a tool called "Xactimate," to estimate not the cost to remediate mold but to reconstruct the entire home, including amounts already expended following the prior appraisal.  *See* Foger Affirmation at 10 ("Although Mr. Zarour's Xactimate estimator presented the amount of $731,317.03, my expertise and knowledge in restoring these older homes can tell you from my experience that this amount may easily be exceeded if all containment and proper protocols are carried through in limited renovations.  If limited renovations are followed, the cost may exceed by 30 to 40% due to the nature of this older building type with rare and old materials that are most likely in limited supply, with labor that is not mastered by current construction professionals."); Dkt. 99-16 (Declaration of Frank Antonucci, Jr.) ¶ 29 ("At our August 23, 2021 meeting, Mr. Foger handed me an estimate of $731,317.03 for building repairs . . . .  Appraiser Foger told me this estimate *included* the $110,490.20 in building repair work previously awarded and paid during the prior building loss appraisal in 2017. . . .  The estimate is not limited to mold damage or mold remediation costs . . . ." (emphasis in original)); *see also id.* ¶ 29, n.6 ("At the joint 8/23/18 inspection, Simon Zarour personally told me that *he* had prepared the $731,317 estimate and he gave it to his appraiser Foger to use in the appraisal." (emphasis in original)).

of vacating an appraisal would create perverse incentives for the party opposing the appraisal in the first place. That party could simply select an appraiser that would generate a vastly inflated or deflated appraisal value that the other appraiser could not possibly agree with, leading to the rejection of any reasonable appraisal valuation.

In sum, the Court rejects the Zarours' first argument opposing confirmation for multiple reasons. The Court is not persuaded that the Zarours rely on the correct standard to review the appraisal award. Further, even under the standard for which they advocate, Foger's estimate is not tied to the case proved so as to create a relevant disparity that may lead to an inference of partiality. And the Court has no confidence that Foger's estimate is even limited to mold damage in the home as required by the Court's February 2017 Order.

Next, the Zarours argue that the appraisal did not substantially comply with the terms of the submission because Pacific's appraiser, Antonucci, and Umpire Lewis did not conduct an invasive search of all the cavities in the Zarours' home and therefore did not comply with the February 2017 Order.[5] Opposition at 3. The Court rejects this argument because the appraisal did

─────────────

[5] Foger's objections to the appraisal are generally similar in attacking the means used to arrive at the final appraisal amount. *Compare* Dkt. 93 *with* Foger Affirmation. He argues first, that Umpire Lewis "should have insisted that he must have walls and ceilings opened (as per his experts [sic] reports) to render his opinion" or otherwise should have disqualified himself, Dkt. 93 at 4; second, that he did "not accept Hillmann [sic] [C]onsulting, hired by Umpire, to opine on the presence of mold when NO investigating or opening of cavities of the building envelope were exposed under containment . . . . Anything short of an invasive inspection under containment would Not [sic] constitute a proper assessment for hidden mold," *id.* at 4-5; third, that Umpire Lewis stated that the "burden of proof is on [the] insured" to show the need for an invasive inspection, *id.* at 5; and fourth, that the insurer "had the responsibility to investigate mold in walls and ceilings," *id.*

Regarding these last two points, the Zarours also argue that "the burden of proof now has shifted to the insurer to establish that a policy exclusion or other defense renders the policy inapplicable." Opposition at 4. But this argument confuses the question of whether an insurance policy applies at all with the question of the extent of damages covered by the policy. Pacific does not appear to challenge that the damages assessed by the appraisal are covered by the policy at

13

substantially comply with the terms of the February 2017 Order.[6]

Leighton, Antonucci's mold consultant, conducted "a visual inspection, environmental testing for ambient temperature and relative humidity, moisture testing of exposed and accessible building components and materials, and sampling with subsequent laboratory analysis for surface mold growth and airborne mold spores."  Leighton Report at 1.  That sampling included sampling in the inspection holes cut by Mr. Zarour.  *Id.* at 9 (Leighton "collected seven (7) surface samples from surfaces inside inspection holes or on exposed surfaces alleged to be mold growth by Mr. Zarour.").  Ultimately, Leighton determined:

> Based on the information presented in this report, including observations, moisture measurements, laboratory analysis results, knowledge about conditions at the property and factors leading to the release of water and/or the accumulation of excess humidity, and to within a reasonable degree of scientific certainty, . . . that with only the one exception of the pantry closet in the southeast corner of the first-floor front bedroom, fungal impact and conditions conducive to mold growth are not present and mold remediation is only required at the one closet identified, but nowhere else at this property at this time.  All surfaces inspected and measured for moisture were found to be dry and with the one exception noted, free of confirmed water-indicator mold growth or only rare amounts of common outdoor molds.

*Id.* at 10.  Umpire Lewis appears not to have conducted any further testing, but instead to have compared materials submitted to him by the parties with the help of his mold specialist, Hillman.  *See* Foger Affirmation at 5 (stating that Umpire Lewis responded concerning the timing of Hillman's mold analysis and any home inspection: "no inspection just file review & opine of what

---

issue in this case, as it has already paid the Zarours for those damages.  Dkts. 99 ¶ 30, 99-24.  And to the extent the Zarours and Foger simply take issue with the investigation undertaken by Pacific's appraiser, such arguments are addressed *infra*.

[6] The Zarours do not contest that the appraisal technically conformed to the procedural requirements of the insurance policy, which stated: "If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire.  Written agreement signed by any two of these three shall set the amount of the loss."  Policy at 68.  Regardless, the Court determines that the appraisal award, signed by Antonucci and Umpire Lewis, satisfies the requirements of the insurance policy.

has been submitted to me for ruling—I can only rule on what has already been submitted." (capitalization removed)).

While this inspection may not have conformed to that demanded by the Zarours' appraiser, it was conducted by an appraiser who utilized a mold consultant with apparent expertise in assessing and remediating mold damage, *see* Dkt. 105 ¶ 1 (Declaration of Robert Leighton) ("I have over 40 years' experience in the fields of environmental health and safety management, which includes the assessment and remediation of environmental health and safety matters in residential, commercial, and industrial settings.  I am a New York State Dept of Labor licensed mold assessor."), involved sampling in various locations of the home including within the interior cavities of the home as selected by the Zarours themselves, and did detect the presence of mold, though to a degree contested by the Zarours.  Umpire Lewis and Antonucci then signed off on an appraisal amount reflecting the findings of that inspection.  *See* Dkts. 99-21, 99-22.  The Court cannot say that such an appraisal failed to satisfy the February 2017 Order.  The Court therefore declines to vacate the appraisal on the grounds that one appraiser disagrees with the methods employed by the other, as "[t]o do otherwise would rob the parties of the opportunity to have their dispute resolved according to their agreement, including the ability to have highly specialized calculations made by technical experts of the parties' choosing as opposed to unfamiliar and less-experienced members of the judiciary."  *Sinclair*, 970 F.3d at 1325; *see also Pianin v. Spier*, No. 601230/05, 2005 WL 5748942, at *2 (N.Y. Sup. Ct. Oct. 11, 2005) ("At most, Pianin challenges the appraisers' methodology and alleges that they carried out their work imperfectly, which does not provide any basis for the Court to substitute its judgment for theirs.").

Because the Court determines that the appraisal substantially complied with the terms of the February 2017 Order, that appraisal must be upheld unless the Zarours present proof of fraud,

bias, or bad faith. But, as stated, the Court has rejected the Zarours only argument as to such proof. The Court therefore confirms the appraisal award.

One issue remains. Pacific contends that confirming the appraisal award should also result in the dismissal of this case with prejudice, maintaining that "[n]othing remains to be litigated." Dkt. 100 at 12. The parties have not fully addressed whether dismissal is appropriate, however. The parties shall each file letter briefs within two weeks of this Opinion and Order, no more than eight pages each, indicating whether and what issues remain in this litigation following the confirmation of the appraisal award. If the Zarours fail to file their letter brief by that deadline, the Court will dismiss this case with prejudice.

## IV.  Conclusion

For the reasons discussed, Pacific's motion is granted in part. Pacific's motion to confirm the appraisal award is granted in the total amount of $115,507. That amount covers the initial award from 2016 in the amount of $110,490.20, which the Court understands was paid in full by Pacific as of September 26, 2016, *see* Dkt. 46 ¶ 2, and the award of $5,016.80 to cover the additional mold damage cost value set by Umpire Lewis and Antonucci, which the Court understands was paid by Pacific on April 14, 2022, Dkts. 99 ¶ 30, 99-24. At this point, however, the Court declines to dismiss the case. The parties shall file letter briefs within two weeks indicating whether and what issues remain to be litigated or whether this case should now be dismissed. The Clerk of Court is respectfully directed to close the motion pending at Docket Number 98.

SO ORDERED.

Dated: May 30, 2023
New York, New York

_____
JOHN P. CRONAN
United States District Judge

16